UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ROBERT L BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. G-09-257 |
| | § | |
| SHAMEKA JONES, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER OF DISMISSAL**

Robert L. Brown (TDCJ # 877851), an inmate in custody of the Texas Department of Criminal Justice-Correctional Institutions Division, (TDCJ-CID), has filed a complaint under 42 U.S.C. § 1983, alleging an excessive use of force by Correctional Officer Shameka Jones at the Darrington Unit. Defendant Jones has moved for summary judgment by and through the Attorney General of Texas. (Doc. # 14). Brown has filed a response (Doc. #19). Based on the pleadings, the motions, the summary judgment record and the applicable law, this court grants the defendant's motion for summary judgment. The reasons for this ruling are stated below.

**I.    Background**

    **A.    Plaintiff's Allegations**

Brown complains of an incident that occurred during his incarceration at the Darrington Unit. He alleges that on December 3, 2008, he was returning from the property room to his assigned housing when he was stopped by defendant Jones in the hall. The defendant ordered Brown to stop and face the wall so that she could perform a pat down search. When Brown complied with the order the defendant struck Brown in the groin area, causing him to buckle and scream in pain. The defendant then ordered Brown "to face the wall" or he would receive a disciplinary case for failing to obey a direct order. Brown complied and the defendant began her

1

pat down search by grabbing his testicles and squeezing them forcefully, stating, "no pain no game [sic]." Brown screamed in pain and yelled for rank. The defendant then ordered Brown to return to his housing area. On an unspecified date after the incident, Brown noticed blood in his urine. He was examined in the infirmary on December 12, 2008, and a urinalysis confirmed the presence of blood in Brown's urine. Brown filed Step One and Step Two grievances; response to the Step Two grievance stated that it was determined by the Regional Office of the Inspector General that there was insufficient evidence to open an investigation. Brown seeks compensatory damages.

B.     The Summary Judgment Evidence

In her motion for summary judgment, defendant Jones denies the plaintiff's allegations and in support of her argument has filed the following summary judgment evidence (Doc. #14):

| | |
|---|---|
| Exhibit A: | Affidavit of Steven P. Bowers, M.D. |
| Exhibit B: | Affidavit of No Records Found for TDCJ Use of Force Dept. |
| Exhibit C: | Relevant Grievance Records |
| Exhibit D: | Relevant TDCJ Medical Records |
| Exhibit E: | Relevant UTMB Medical Records |

The defendant asserts that there is "zero evidence" that the pat-down of Brown ever occurred. No use of force investigation was conducted because Brown did not file a grievance until thirteen (13) days after the incident allegedly occurred. (Doc. # 14, Exh. B).

Brown's medical injury claims were reviewed by Dr. Steven P. Bowers, a physician at the University of Texas Medical Branch and the Director of the Continuing Medical Education Committee for the University of Texas Medical Branch Correctional Managed Care. In his affidavit (Doc. #14, Exh. A), Bowers gives a detailed description of Brown's medical history following the December 3, 2008, incident made the basis of this suit, summarized as follows:

12/4/08:    a "use of force" nursing note reveals that Brown denied any injury and there were no visible signs of injury;

| | |
|---|---|
| 12/4/08-<br>12/8/08 | no symptoms or complaints; |
| 12/12/08: | urinalysis revealed blood and a few bacteria; |
| 12/17/08: | examination by Dr. Okoye - antibiotics and pain medication prescribed for tenderness; |
| 12/23/08: | follow-up examination by Dr. Okoye - pain had subsided; diagnosis of resolving orchitis (inflammation of the testicles); Brown ordered to finish antibiotics and follow up with a urinalysis; |
| 12/31/08: | examination by Dr. Ahmad for complaint on 12/30/08 of testicular pain and burning during urination; exam revealed blood in urine, testicular tenderness; assessment was testicular trauma; pain medication and ultrasound of scrotum were ordered; |
| 1/21/09: | ultrasound revealed diffuse bilateral microlithiasis (presence of minute calculi or gravel) and deposits in the tubules of the testicles; pain medication prescribed and urology appointment scheduled; |
| 4/9/09: | examination by Dr. Hulipas after continuing sick call requests complaining of testicular pain; no nausea or vomiting, which is common with testicular pain; no testicular swelling; no problems ambulating, which is often difficult with testicular pain; continue current medications; |
| 5/27/09: | examination by urologist at UTMB; Brown denied being treated with antibiotics and having urine cultures performed; exam revealed morbid obesity, a very small meatus (congenital), small testicles bilaterally and tender to palpation; urinalysis negative for blood; evidence of infection; Brown refused a cystourethrogram; two week course of antibiotics ordered; |
| 6/19/09-<br>12/20/09: | complaints of testicular pain; examinations revealed no significant findings; pain medication continued; |
| 12/20/09: | urinalysis positive for blood; Bactrim antibiotic prescribed; |
| 2/23/10: | Brown's "keep on person" medications of Bactrim antibiotic and two blister packs of Motrin (the same medications prescribed at various medical visits) found by security. |

Dr. Bowers states that there are several possible causes of Brown's testicular pain, hematuria and urinary infections "for which he was treated several times with varying

3

medication, some of which he hoarded and did not take as prescribed." He noted that microlithiasis is not brought on by trauma; Brown's urinary infections were most likely due to the focal stricture in his urethra; morbid obesity causes decreased venous flow in the scrotum and can be painful; and trauma to the scrotum could have induced testicular swelling as well as immediate blood in the urine. Dr. Bowers stated that Brown's refusing a cytoscopy significantly limited the ability to more accurately diagnose his condition, and that "not taking medication as prescribed can further confuse the diagnostic picture." Dr. Bowers concluded his affidavit stating: "Even assuming that Brown's scrotum and penis were "cuffed" and his testicles were squeezed, it is unlikely that it had or has any long term detrimental effects on Brown's genitourinary system or any other body system."

## II.     The Legal Standard on Summary Judgment

The defendant's motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of showing that summary judgment is appropriate. *See Martco Ltd. Partnership v. Wellons*, *Inc.,* 588 F.3d 864, 871 (5th Cir. 2009) (citing *Celotex*, 477 U.S. at 323). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *Celotex Corp.,* 477 U.S. at 322-23.

If the moving party meets its initial burden, "[t]he nonmoving party 'must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim.'" *Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 844 (5th Cir. 2009) (quotation omitted). The non-movant must do more than simply show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 478 U.S. 574, 587 (1986). "A fact is material only if its resolution would affect the outcome of the action, ... and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Wiley v. State Farm Fire and Cas. Co.,* 585 F.3d 206, 210 (5th Cir. 2009).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.,* 478 U.S. at 587-88. However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004). The nonmovant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *Diamond Offshore Co. v. A & B Builders, Inc.,* 302 F.3d 531, 545 n. 13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l.* 343 F.3d 401, 405 (5th Cir. 2003).

### III. The Claims Against the Defendant in Her Individual Capacity

The defendant asserts that she is entitled to qualified immunity as a matter of law because Brown failed to allege a constitutional violation.

To determine whether a public official is entitled to qualified immunity for an alleged constitutional violation, reviewing courts typically conduct the two-prong analysis established in *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson*, 525 U.S.223, 129 S.Ct. 808, 817 (2009). The first prong of the *Saucier* analysis asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right. *See Scott v. Harris*, 550 U.S. 372 (2007) (citing *Saucier*, 533 U.S. at 201). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established ... in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). If there is evidence to support the violation of a constitutional right, the second prong of the *Saucier* analysis asks whether qualified immunity is appropriate, nevertheless, because the defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss.,* 543 F.3d 221, 225 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)).

The Supreme Court has recently clarified that the two-prong protocol established in *Saucier* is no longer mandatory for resolving all qualified immunity claims. *Pearson*, 129 S.Ct. at 818. Reviewing courts are permitted "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* In this case, the Court finds it appropriate to

6

determine initially whether a constitutional violation occurred under the traditional two-step procedure established in *Saucier.*

In the case of a qualified immunity defense, the usual summary judgment burden of proof is altered. *See Gates v. Texas Dep't of Protective and Regulatory Servs.,* 537 F.3d 404, 419 (5th Cir. 2008). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *See Mitchalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Brazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Mitchalik*, 422 F.3d at 262; *see also Ontiveros v. City of Rosenberg, Tex.,* 564 F.3d 379, 382 (5th Cir. 2009) (noting that, to avoid summary judgment on qualified immunity, a plaintiff need not present "absolute proof, but must offer more than "mere allegations") (quotation omitted).

### A.     The Excessive Use of Force Claim

Under the Eighth Amendment, a correctional officer's use of excessive force against a prisoner may constitute cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1 (1992). Inmates raising allegations of excessive force must show that the force used was malicious and sadistic and for the very purpose of causing harm, rather than in a good faith effort to restore discipline; the Supreme Court also noted that the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Id.*

In accordance with the decision in *Hudson*, the Fifth Circuit has instructed the courts in this circuit to consider five factors in analyzing excessive use of force claims: (1) "the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and, (5) any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992). With reference to the first factor, the Fifth Circuit has expressly held that the claimant must show injuries that are more than *de minimis*, even if not "significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921 (5th Cir.1999); *accord, Hudson*, 503 U.S. at 7. Not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied*, 414 U.S. 1033 (1973).

There appears to be little, if any, evidence that the medical problems complained of by Brown were attributable to actions taken by defendant Jones. Brown was examined by medical personnel on December 4, 2008, the day after the alleged trauma to his scrotum. At that time, Brown denied having any injuries and no visible injuries or adverse health effects from a use of force were observed. (The medical record and affidavit of Dr. Bowers also reveal that Brown had no symptoms or complaints of injury on that day.) As correctly noted by the defendant, it does not appear that Brown's complaints of pain and suffering manifest until several days after the initial examination. In his affidavit, Dr. Bowers noted that Brown had several pre-existing medical conditions that could have caused his symptoms, including microlithiasis, focal stricture in his urethra and morbid obesity. Bowers also noted that Brown atypically did not display any difficulty walking either the day after the injury or four months later when he was still experiencing pain. Brown also hoarded his pain medication, which he requested frequently, and

his antibiotics, which can be rendered ineffective when not taken as directed. Because Brown did not file a grievance until thirteen days after the incident (thus precluding a use of force investigation) and did not voice a complaint or shown any signs of injury until several days after the incident, the Court can only conclude that Brown's injuries, even if they did occur as alleged, were *de minimis,* at best. As such, Brown's claims are excluded from constitutional recognition and must be dismissed.

IV. **CONCLUSION**

For the reasons discussed, the defendant's motion for summary judgment is **GRANTED** and this action is **DISMISSED** with prejudice as frivolous and for failure to state a claim for which relief can be granted.

All pending motions are **DENIED** as moot.

**The Clerk shall provide a copy of this order by regular mail, facsimile transmission, or e-mail to: (1) the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; (2) the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, fax: 936-437-4793; and (3) the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three-Strikes List.**

SIGNED at Houston, Texas this 10th day of March, 2011.

_____
Kenneth M. Hoyt
United States District Judge

9